WEYL-ZUCKERMAN & COMPANY, A CORPORATION, RESPONDENT, v. HARRY SCHNELL ET AL., TRADING AS H. SCHNELL & COMPANY, APPELLANTS.

---

J. C. FAMECHON & COMPANY, A CORPORATION, RESPONDENT, v. HARRY SCHNELL ET AL., TRADING AS H. SCHNELL & COMPANY, APPELLANTS.

Submitted July 11, 1921—Decided October 14, 1921.

On appeal from the Supreme Court, in which the following *per curiam* was filed:

"These two actions were tried together and the respective plaintiffs recovered in each case, the verdicts having been reduced by the trial court on rule to show cause, and judgments entered for the reduced sums. The exceptions were reserved and an appeal from each judgment is now before us. The facts which the jury might find from the evidence are that the defendant, in expectation of a large shipment of onions from

Spain, applied to a broker by the name of Sicker to find a market for these goods, agreeing to pay all the expenses of telegram and telephone messages; that Sicker having clients in the west offered them the goods for purchase; that the two plaintiffs, acting separately, authorized the purchase and thereupon Sicker reported the same to the defendant that he had made the sale, and the following day left with the defendant a writing signed by Sicker, which read, 'Beg to confirm order placed with you * * * for the account of Messrs. J. C. Famechon & Co., of Minn., to be shipped from the steamer due around January 25th, 1917.' He wrote to Famechon & Company, 'We have booked car yesterday * * * to H. Schnell & Co.,' to which Famechon replied, 'We acknowledge receipt of yours of the 15th with confirmation to H. Schnell & Co. for car of Spanish onions coming out from the steamer due around January 25th.' As to the other plaintiff, Weyl, Zuckerman & Company, Sicker testified that he placed with the defendant a similar confirmatory order, and received from the plaintiff a letter acknowledging the notice of the purchase for their account from the defendant, and confirmed the purchase. The price of onions advanced. When the ship arrived with the onions the defendant claims that they were not merchantable, and refused to deliver, although the plaintiffs were willing to accept. In support of this appeal the defendant urges that there was no evidence that Sicker was agent for the defendant. We think there was evidence from which the jury might infer that Sicker was the defendant's agent. He was a broker apparently acting for both parties to negotiate a sale, and was certainly engaged by the defendant, originally, to make the sale, and we do not see how, in face of the evidence, the court could either nonsuit or direct for the defendant on the ground of want of agency, and, therefore, there was no error in this particular.

"The next point is that the memorandums were not sufficient to constitute a contract under the statute of frauds, in that the memorandums were not signed by the party to be charged. It must be clear that if the defendant had personally written the letters to the plaintiff it would be an agree-

ment to sell, in writing, and within the statute, and, as the jury found, supported by the evidence, that Sicker was the authorized agent of the defendant, we fail to see any reason why there should be a direction against the plaintiffs on this point.

"The next point is that the memorandum is not within the statute because it does not set out all the terms of the agreement. We think the memorandum was sufficient. It fixed the quantity, size of crate and quality, as well as the name of the buyer, and the point of shipment; to be sure, there were no terms about credit, but that is not material because in its absence it would mean cash.

"The next point made is that there was an oral modification so as to provide for deliveries from a steamer to arrive later than January 25th, and it is urged that this extension invalidates the contract. The contract provided that the onions be shipped from a steamer around January 25th. The steamer was not named, but the steamer on which they came did not make port until the 22d day of February. But if this be so, that extension was made by the defendant's agent. and is not objected to by the plaintiffs, the defendant could take no advantage of an extension of time for his benefit, but if the extension was void, then the defendants were bound to deliver according to their original contract.

"The next point is that the contract was for sale of goods to arrive, and, therefore, conditioned upon the arrival of the goods of the character and quality specified, within the time specified. Granting this legal proposition to be sound, there was proof that the onions which arrived were satisfactory to the plaintiffs. who were willing to accept them as those called for by the contract, and that question was submitted to the jury. It would hardly do to allow a man to break his contract by claiming that the goods which he had received were not of the proper quality when the other side were perfectly willing to accept them. especially when it appears that the Spanish onions had very greatly advanced in price.

"We see no error and think the judgment should be affirmed."

For the appellants, *McDermott & Enright*.

For the respondent, *Weller & Lichtenstein*.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK, JJ.   11.

*For reversal*—None.